944 F.2d 906
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Antonio SMITH, Defendant-Appellant.
 No. 90-2293.
 United States Court of Appeals, Sixth Circuit.
 Sept. 18, 1991.
 
 Before RALPH B. GUY, Jr., Circuit Judge, JOHN W. PECK, Senior Circuit Judge, and SILER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, David Antonio Smith, was charged in a nine-count indictment with various violations of the narcotics and firearms laws.[1] After a jury trial, Smith was convicted on all nine counts.
 
 
 2
 On appeal, Smith raises challenges as to all counts of conviction except the conspiracy charged in count three. The claimed errors can be grouped as to those challenging the sufficiency of the evidence, claimed errors in evidentiary rulings, prosecutorial misconduct, and ineffective assistance of counsel. Upon a review of the record, we conclude that there has been no showing of any error sufficient to justify a reversal. Accordingly, we affirm.
 
 I.
 
 3
 On February 20, 1990, agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) executed a search warrant at 3902 Beech Daly Road, Apartment 4, Inkster, Michigan. The residence located at this address contains four apartments. In conjunction with executing a search warrant at apartment four, the agents also conducted, by consent, a search of apartment three. There is no dispute that apartment four was the residence of defendant Smith and his girlfriend, Tamara Lynn Gorsuch. In apartment four, the search team found five live rounds of 9mm. ammunition, 13 live 20 gauge shotgun shells, an owner's manual for a Mossberg shotgun, a beeper in a black case, 12 colored photographs of defendant Smith showing him in a variety of poses with a 9mm. firearm, an ammunition clip that appeared to contain 9mm. ammunition, a large amount of United States currency, and a partially visible triple-beam scale. The agents also found a number of documents linking Smith to the apartment, including a rent receipt, a receipt for furniture, and an envelope indicating the Beech Daly apartment as defendant's return address.
 
 
 4
 In apartment three, the agents found a fireproof strong box, which contained the following items relating to the criminal charges that were ultimately brought: 42 grams of cocaine, 4.7 grams of cocaine base (crack), a 9mm. handgun, 20 live 9mm. rounds of ammunition, a magazine containing 16 live rounds of 9mm. ammunition, an empty box of "Super X" brand 20 gauge shotgun shells, a box of weights for use with a triple beam scale, an automobile certificate of title in the name of Tamara Lynn Gorsuch, and another rental slip for apartment four made out to David Smith. The agents also found an Ohaus triple beam scale of the type partially visible in the photograph found in defendant's apartment.
 
 
 5
 With regard to the 12 color photographs that were found in apartment four, ATF agents subsequently returned to this apartment and took photographs, enlargements of which indicate that the photographs seized were actually taken in the apartment where they were found. All of the above-listed items found in apartment three and four related in one way or another to the nine counts of the indictment ultimately brought against Smith.
 
 II.
 
 6
 A. Sufficiency of the Evidence as it Relates to the Strongbox and its Contents
 
 
 7
 In reviewing sufficiency of the evidence claims, our standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Also, "[t]he government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984) (citations omitted), cert. denied, 467 U.S. 1193 (1985). In beginning our consideration of the sufficiency of the evidence against the defendant, we first note that the above detailing of the physical evidence that was seized represents only a small portion of the significant evidence that was introduced against the defendant. The defendant admittedly was in the narcotics business as witnessed by the fact that he does not appeal his conspiracy conviction under count three. Smith's narcotics trade covered a two-state area, Michigan and Ohio. One of his trusted lieutenants in Michigan was Andre Smith. One of the defendant's key associates in Ohio was Jermaine A. Smith. Without attempting to detail their testimony, suffice it to say, if believed, it would be sufficient in large part in and of itself to carry the government's burden of proof. Although both Jermaine Smith and Andre Smith testified either under immunity grants or for other considerations, it should be noted that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." Adamo, 742 F.2d at 935. Credibility determinations are for the jury. United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989). Defendant primarily challenges the sufficiency of the evidence tying him to the items found in the strongbox that was found in the consent search of apartment three. Counts one, two, four, eight, and nine of the indictment all relate to evidence found in the strongbox. Although the box was found in an apartment other than that occupied by the defendant, Andre Smith testified that he overheard the defendant order Tamara Gorsuch to move the box to the apartment where it was ultimately found. Andre Smith and Jermaine Smith also testified that the box, as well as the drugs and the 9mm. pistol in the box, belonged to the defendant. Jermaine Smith also testified that, after the box had been found by the government agents, the defendant bragged to him that he had moved the box before the raid and that the government would not be able to hold him responsible for its contents. Although there was other evidence also tying the defendant to the box and its contents, the foregoing recitation is sufficient to indicate clearly that there was more than ample evidence in the record from which a reasonable juror could have concluded that the box and its contents were the property of David Smith.
 
 
 8
 B. The Sufficiency of the Evidence as it Relates to Possession of the Firearms Charged in Counts Five, Six, and Nine
 
 
 9
 The defendant was charged in count five of the indictment with possession of a Mossberg shotgun. The shotgun was not found in defendant's apartment when the search warrant was executed, but the owner's manual for the shotgun was found. Buttressing this piece of circumstantial evidence was the testimony of Andre Smith and Jermaine Smith that they had both seen the defendant with the shotgun in his physical possession. Andre Smith testified that he had purchased the shotgun for the defendant and also testified that the defendant took the shotgun over to the home of an associate, Al Upshaw, who had asked the defendant to give him a firearm for protection. Al Upshaw's wife, Niesce Upshaw, testified that the defendant brought over a wrapped object and delivered it to her and retrieved the object a few days after the search warrant had been executed. The wrapped object was the size, shape, and heft of a shotgun. This is adequate evidence from which a reasonable juror could conclude that defendant Smith was in possession of the Mossberg shotgun.
 
 
 10
 Count six charged the defendant with possessing a .380 caliber handgun of unknown manufacturer and serial number. The defendant was never found in actual possession of this gun; however, the government put together a strong circumstantial case indicating that defendant did possess such a handgun. First, Jermaine Smith testified that he knew defendant to carry a .380 handgun on his person. Second, defendant admitted to Andre Smith that he shot an individual named Bud Wilson. Although Wilson did not actually see the defendant shoot him, he did testify that he saw the defendant outside his door and heard him yell "Open the door or I'll shoot" shortly before a shot was fired, which went through the door and hit Wilson in the chest. A ballistics expert testified that the bullet removed from Bud Wilson's chest was a .380 caliber round. The expert also testified to a 90 percent degree of certainty that the .380 bullet was fired from a .380 pistol. We conclude that this evidence was adequate to put the matter properly before the jury.
 
 
 11
 Count nine charged Smith with possession of a Fratelli 9mm. semi-automatic pistol during or in relation to a drug trafficking offense. The 9mm. pistol was the found in the strongbox, which we previously have discussed in terms of whether the evidence supported defendant possessing this pistol. Insofar as its use in connection with a drug trafficking offense, the pistol was stored with cocaine, ammunition, and drug proceeds in a box that only defendant and his co-conspirator, Tamara Gorsuch, could open. Thus, the handgun was readily accessible during any drug transaction involving the contents of the strongbox. There was also testimony in the case that defendant Smith had used this gun to threaten his competitors in the drug business. In United States v. Clark, 928 F.2d 733, 737 (6th Cir.1991), we held that, where a handgun was found in close proximity to drugs and currency, this evidence was sufficient to support the conviction for using and carrying the firearm during or in relation to drug trafficking. The evidence here is even stronger than that presented in Clark.
 
 III.
 
 12
 The district court admitted into evidence 12 color photographs of defendant posing with a handgun, a large amount of currency, an electronic beeper, and a triple beam scale. Objections were made by defense counsel when these photos were offered into evidence. There was no objection, however, when one of the government agents testified that in his opinion the photos were taken in the apartment occupied by the defendant. This testimony was based on the subsequent photographs that were taken by the agents and enlarged, enabling the jury to make comparisons of similarities between the background and the wall shown in the photos seized and the detailed photographs taken subsequently. There was also testimony by a government agent that the pistol the defendant was holding in the seized photos appeared to be the same weapon as the Fratelli 9mm. pistol that he was charged with possessing. We can find no error in the admission of these photos. The relevancy of the photos was established, and the agent who gave his opinion that the photos were taken in defendant's apartment laid a sufficient foundation entitling him to opine as he did.
 
 IV.
 
 13
 We find defendant's claims of prosecutorial misconduct to be totally lacking in merit. Defendant complains that the prosecutor, in his closing argument, stated that the ballistics expert had said that the bullet taken from the chest of Bud Wilson came from a .380 caliber weapon. The expert had testified that he was 90 percent certain that the bullet came from a .380 caliber weapon. We do not find the prosecutor's characterization of this testimony to be misleading or prejudicial in a manner that would constitute prosecutorial misconduct. We also note that there was no objection to the statement when it was made.
 
 
 14
 We find similarly lacking in merit the objection to the prosecutor's summary of Niesce Upshaw's testimony. The prosecutor's speculation that the shotgun was at the Upshaws on the day that the search warrant was executed at defendant's apartment was adequately supported by the record and particularly by the testimony of Niesce Upshaw. Here again, there was no objection to the statement at the time it was made by the prosecutor during his closing argument.
 
 V.
 
 15
 Defendant's last claim of error is ineffective assistance of counsel. Although we do not normally review ineffective assistance of counsel claims on direct appeal,[2] here, the ineffective assistance of counsel claim is the failure to object to the admission of certain evidence and the alleged prejudicial comments of the prosecutor in closing arguments. Since we have found that the evidence in the case was all properly admitted and that there were no statements constituting prosecutorial misconduct, it is in the interest of judicial economy for us to consider defendant's claim of ineffective assistance of counsel at this time. It is obvious that defense counsel who makes no objections to matters that are not in violation of the rules of evidence or rules of procedure is not rendering ineffective assistance of counsel.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Counts one and two charged Smith with possession of approximately 42 grams of cocaine, and an amount of cocaine base or "crack," with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). Count three charged Smith with conspiring with his girlfriend to possess the cocaine and crack with intent to distribute, in violation of 21 U.S.C. § 846. Counts four, five and six charged Smith with three instances of being a felon in possession of a firearm, violations of 18 U.S.C. § 922(g). Counts seven and eight charged defendant with being a felon in possession of two different sets of ammunition, also violations of 18 U.S.C. § 922(g). Count nine charged Smith with the use and carrying of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)
 
 
 [2]
 See United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989)