9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond E. HOLMES, Defendants-Appellant.
 No. 92-6576.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1993.
 
 Before: KEITH, NELSON, AND RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Raymond E. Holmes appeals his September 1, 1992 jury conviction for possession of a firearm by a felon under 18 U.S.C. Sec. 922(g). Holmes argues that he did not actually nor constructively possess a firearm and the government failed to provide sufficient evidence to prove such possession. For the reasons set forth below, we AFFIRM the guilty verdict.
 
 I.
 
 2
 On June 25, 1992, several Madison County Sheriff's Department officers, acting on a Crime Stoppers tip, traveled to the Fairfield Inn ("Inn") to serve an outstanding warrant on Raymond Holmes. According to the tip, Holmes was residing in Room 306. After speaking with the Inn management, Officers Craig and Frizzell knocked on the door to Room 306. A male voice answered and a female opened the door.
 
 
 3
 When the door opened, Officer Duncan observed a male enter the bathroom. Officer Duncan entered the room and ordered: "Raymond come out of the bathroom." The man exited the bathroom and the officers secured him and turned on the lights in the room. The officers then asked the man for identification. Although he was later identified as Raymond Holmes, the defendant presented a Check Express Card naming Harold Glen Davis and represented himself as Harold Glen Davis. The woman who answered the door then identified herself as Tamara Byrd. She later told the officers she knew the defendant as "Raymond" and that she had been seeing him for a few weeks. She also stated that she had previously visited the defendant at the Inn.
 
 
 4
 Once the lights were turned on, Officer Duncan observed a semi-automatic pistol, in plain view, on a night stand in the southeast corner of the room. The pistol was identified as a Glock semi-automatic pistol, model 23, .40 caliber with an after market laser sight attached. The pistol was fully armed and the clip was inserted.[1]
 
 
 5
 At trial, Tamara Byrd testified that on the morning of the arrest she arrived at the Inn at around one a.m.. Byrd testified that although the room was dark, except for the light from the television and the bathroom light, her eyes adjusted to the dimness and she never saw the gun on the nightstand, nor had she seen it at any time before the police entered the room.
 
 
 6
 At trial, defense witness Dwaine Wood identified the pistol, testified that he owned the pistol, and produced a purchase receipt for the gun. Wood stated that he had visited the defendant on or around the first of June and had inadvertently left the pistol, locked in a black briefcase, in the defendant's room when he was called away on an emergency. According to Wood, he neither displayed the gun to the defendant nor did he inform the defendant of its presence in the briefcase. No black briefcase was recovered from room 306 although Wood testified he had inquired as to its whereabouts.
 
 
 7
 At trial, two Inn employees identified Raymond Holmes as the occupant of Room 306. Joanne Gunby testified that the defendant had been a guest in the hotel for approximately three weeks before the arrest. Gunby and Idaline Reed, both members of the housekeeping staff, stated that they were aware of the presence of a gun in Room 306 before the date of the arrest. Reed stated she saw a gun approximately three weeks prior to June 26, and that on the day of the arrest she alerted the officers to the presence of a gun. After the arrest, Gunby collected and itemized all personal items Mr. Holmes left in the room. Such items filled a large cardboard box and two garbage bags. Gunby testified, however, that she did not find nor had she ever seen a black briefcase in Room 306.
 
 
 8
 On June 29, 1992, the Federal Grand Jury for the Western District of Tennessee returned a one count indictment charging the appellant, Raymond Holmes, as a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). Holmes plead not guilty and the case proceeded to jury trial on August 31, 1992. The defense and government stipulated to the defendant's five prior felony convictions listed on the indictment.
 
 
 9
 At the close of the government's arguments, the defendant moved for acquittal and renewed the motion at the end of the evidence. Both motions were denied. On September 1, 1992, the jury returned a guilty verdict. The district court entered an order on this verdict the next day.
 
 
 10
 On October 27, 1992, the district court sentenced Holmes to 188 months and five years supervised release to run concurrently with his state sentences. Judgment was entered on November 16, 1992. This timely appeal followed.
 
 II.
 
 11
 In the instant appeal, Holmes contends the government presented insufficient evidence to prove the possession element of 18 U.S.C. Sec. 922(g). He claims that he did not own the firearm in question and that the government did not prove actual or constructive possession of such firearm. We disagree.
 
 
 12
 The appellant was convicted under 18 U.S.C. Sec. 922(g) as a convicted felon in possession of a firearm. Officer Duncan identified the defendant-appellant and testified that he found in plain view, a fully loaded Glock, model 23, .40 caliber pistol on a nightstand in the defendant's room. The appellant disputes the element of possession and argues that there was no proof presented of either actual or constructive possession.
 
 
 13
 In order to determine whether the evidence was sufficient to support Holmes' conviction, this Court must sustain the determination of the jury if it is supported by substantial and competent evidence. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983) This Court must determine whether any rational trier of fact could have found the essential elements of the crime, beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991) citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); United States v. White, 932 F.2d 588 (6th Cir.1991). In the instant case, we find sufficient evidence exists from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 
 14
 Both actual and constructive possession satisfy the possession element for purposes of 18 U.S.C. Sec. 922(g). Actual possession occurs when a party has immediate possession or control over a tangible object. Constructive possession exists when, although no actual possession exists, the party knowingly has the power and the intention at a given time "to exercise dominion and control over an object, either directly or through others." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied 414 U.S. 866 (1973) citing United States v. Viraglia, 441 F.2d 1295 (5th Cir.1971) and United States v. Burch, 313 F.2d 628 (6th Cir.1963). In White, this Circuit further refined the definition of constructive possession stating that "the evidence must indicate, 'ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.' " 932 F.2d at 589 citing United States v. Gordon, 700 F.2d 215, 217 (5th Cir.1983) (emphasis added). Both actual and constructive possession may be proven by direct or circumstantial evidence, and such evidence need not remove every reasonable hypothesis except that of guilt. United States v. Morgan, 469 F.2d 83 (6th Cir.1972). Proving mere knowledge of the presence of the object, without more, is not sufficient evidence of dominion and control. White, 932 F.2d at 590.
 
 
 15
 The defendant was arrested with a fully loaded semi-automatic pistol in plain view on his night stand. The government offered expert testimony proving first, the gun was operable and second, that the gun had traveled in interstate commerce. In addition, the government offered proof that the defendant lied about his identity and offered false identification to the arresting officers. At trial, Joanne Gunby testified that the defendant had been a guest in the motel for approximately three weeks prior to his arrest. Furthermore, Gunby testified that she was aware of the presence of a gun in the defendant's room before the date of the arrest. Idaline Reed similarly testified concerning her awareness of the presence of a gun in the defendant's room approximately three weeks before the arrest, and she alerted the arresting officers to its presence.
 
 
 16
 Holmes' only defense is that he did not own the gun. He argues that this lack of ownership coupled with the fact that Byrd testified that she did not see and had never seen a gun in his room negates any actual or constructive possession on his part. The defendant offered the testimony of Dwaine Wood, establishing that Wood was the true owner of the gun and that he had left the gun with the defendant, locked in a black briefcase and unknown to the defendant.
 
 
 17
 The test in this Circuit, however, is "ownership or dominion and control." White at 590. If one believes Wood's testimony, the Glock somehow moved from a locked briefcase to the nightstand where it lay fully loaded for an unspecified length of time. In its brief, the government astutely noted that for the gun to have moved from a locked briefcase to the defendant's night stand, where it was found loaded and in plain view, someone, most likely the defendant, necessarily exercised dominion and control over the gun.
 
 
 18
 In the instant case, the government offered sufficient proof for a rational trier of fact to determine that Raymond Holmes possessed a firearm beyond a reasonable doubt. Despite a lack of ownership and lack of actual physical possession at the time of arrest, the evidence offered, although circumstantial, proved possession beyond mere proximity or mere knowledge. Accordingly, we conclude that a rational jury could have found that the fully loaded pistol in plain view in his motel room constituted the "immediate possession or control" required for actual possession, or certainly that Mr. Holmes exercised the requisite "dominion and control" over the firearm similarly to satisfy the test for constructive possession.
 
 III.
 
 19
 For the above stated reasons, we AFFIRM the jury verdict convicting Raymond Holmes of felon in possession of a firearm.
 
 
 
 [1]
 The pistol and the clip with ammunition were entered as collective exhibit 1 (T.T., Vol. 1, p. 12-13, 18-19). Brian Hobeck, an agent with the Bureau of Alcohol, Tobacco and Firearms testified that he tested the pistol and it was in an operable condition. In addition, he testified that the records reflected that the pistol had been purchased by one Yolanda Coleman in Birmingham, Alabama. ATF Agent Wayne Kilday, a firearms expert, testified that the Glock, model 23, .40 caliber pistol had been manufactured in Austria and imported in Smyrna, Georgia (T.T., Vol. 1, p. 63)