**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Tony Edward JOHNSON,**
**Defendant–Appellee.**

**No. 00–5195, 00–5277.**

United States Court of Appeals,
Sixth Circuit.

April 29, 2002.

Before NORRIS, SILER, and BATCHELDER, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.

Tony Edward Johnson was convicted by a jury on all counts of a four-count indictment for drug trafficking and firearms offenses. The district court granted a judgment of acquittal on Counts Two and Three of the indictment, and the United States appeals the acquittal on Count Two. Johnson cross-appeals his conviction on Counts One and Four. We will affirm the convictions on Counts One and Four; we will reverse the judgment of acquittal on Count Two and remand for resentencing consistent with this opinion.

## BACKGROUND

Officer Bowman, a narcotics investigator with the Lexington Police Department and a recently commissioned deputy sheriff in Henderson County, received information

from an informant from whom Bowman had received information in the past, regarding the presence of marijuana at Johnson's residence in Henderson County, Tennessee. Bowman verified through officers at the Henderson County Sheriff's Department that the informant had provided reliable information to them in the past. Bowman also received similar information about Johnson from two other sources.

Bowman presented an affidavit to a Tennessee General Sessions Judge and requested a search warrant for Johnson's home. The affidavit included Bowman's statement that:

A reliable informant who has given information to the Henderson Co. Sheriff Department which has lead [sic] to the seizure of illegal narcotics such as Schedule # 4 drugs and did result in an arrest. Also the informant has given information to the affiant which has proven true and correct and lead [sic] to the seizure of Schedule # 6 drugs. That within the past 72 hours the informant has seen marijuana at the above described location and that the affiant has received information from other sources confirming the information received by the informant.

Officer Bowman claims that he identified the confidential informant to the judge and that the judge knew the informant, although the judge testified at the suppression hearing that he did not recall whether he was given the identity of the informant. In any event, the judge determined that the affidavit presented sufficient evidence to constitute probable cause and issued the warrant.

Officer Bowman and a number of officers from Henderson County then searched Johnson's residence. Johnson was not present during the search. In the kitchen, officers discovered two baggies of marijuana in the freezer and a large electric digital scale beside the refrigerator. The search of the living room revealed a loaded .45 semi-automatic pistol tucked between the arm and the cushion of the couch; a brown, combination lock briefcase containing a loaded, fully automatic 9mm pistol, sitting under a coffee table in front of the couch; a small bag of marijuana lying next to the briefcase; a small notebook containing a log of sales, including drug prices, on an end table next to the couch; and, on the couch, a Bearcat police scanner, which was scanning law enforcement frequencies.

In the back bedroom, officers discovered a loaded Smith & Wesson .38 caliber revolver placed under the mattress; a safe containing two small bags of marijuana and numerous papers; and, hidden in the wardrobe, a partially disassembled SKS assault rifle. Some of the weapon's parts were hanging next to it, and ammunition was scattered throughout the bedroom.

Officers also uncovered a surveillance system, which included a total of four running cameras operating in the front and rear of the residence. Additional items seized included five Motorola radios, a bullet-proof vest, a book with marijuana in it, a crack pipe, rolling papers, a can with marijuana residue, a bong, a picture of former President Clinton smoking pot, a Motorola pager, *High Times* Magazine (which discusses how to distribute marijuana, how to grow it, and how to obtain drug paraphernalia), and pills.

Johnson was indicted on charges of (1) possessing with intent to distribute approximately 121.7 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1); (2) during and in relation to a drug trafficking crime—specifically possessing with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1)—using and carrying a firearm, and in furtherance of such crime

possessing specifically enumerated firearms, including a 9mm AA Arms Model AP9 semi-automatic pistol which had been converted to a machine gun, in violation of 18 U.S.C. § 924(c)(1)(A); (3) unlawfully and knowingly possessing a machine gun, namely, a 9mm AA Arms Model AP9 semi-automatic pistol which had been converted to a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); and (4) knowingly receiving and possessing a firearm, a 9mm AA Arms Model AP9 semi-automatic pistol which had been converted to a machine gun as defined by 26 U.S.C. §§ 5845(a) and (d), not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Johnson moved to suppress all the evidence, contending that the search warrant was not based on probable cause. As part of the motion to suppress, Johnson requested the disclosure of the confidential informant's identity. The district court found that the identity of the informant was not necessary to Johnson's preparation for trial and denied the motion to suppress.

At trial, the government presented a number of witnesses who testified to their parts in the search of Johnson's home, the drug amounts and drug paraphernalia they found there, and how those items related to drug trafficking. Government witnesses also testified that the gun found in the briefcase was an AA Arms Model AP9 9mm semi-automatic pistol that had been modified to have the capability of open-bolt firing and thus met the statutory definition of a machine gun; that the gun was not registered; and that modifications also had been made to the SKS rifle in an attempt to make it a fully automatic weapon, but poor workmanship had foiled the attempt.

Both Johnson's ex-wife, Vicky Byrd, and Johnson's brother, Terry Russell Johnson ("Terry"), testified at trial that they used marijuana with Johnson, but Terry claimed that he had never seen his brother sell marijuana. Terry acknowledged that his brother owned a pistol, but testified that Jeffrey Hayes, a friend, had brought the briefcase to Johnson's home; Terry admitted that he had no knowledge of what, if anything, had been in the briefcase. Hayes testified that he smoked marijuana with Johnson and Terry, and acknowledged that Johnson owned at least two pistols.

The jury found Johnson guilty on all four counts, and Johnson moved for a judgment of acquittal on all counts or, alternatively, for a new trial. The district court denied the motion for a new trial, granted the motion for acquittal on Counts Two and Three, and denied the motion for acquittal on Counts One and Four. Johnson was sentenced to seventy-two months' imprisonment. This timely appeal and cross-appeal followed.

## ANALYSIS

We will address first Johnson's cross-appeal challenging his conviction on Counts One and Four. Johnson claims that the affidavit supporting the search warrant was insufficient to demonstrate probable cause, and the district court therefore erred in denying his motion to suppress and the related demand that the government disclose the identity of the informant on whose information the warrant was based. Johnson also claims that the evidence presented at trial was not sufficient to support a finding of constructive possession of an unregistered firearm, namely a machine gun.

### I. Motion to Suppress

In reviewing a district court's decision on a motion to suppress, we will uphold the district court's findings of fact unless they

are clearly erroneous; we review de novo the court's legal conclusion regarding the existence of probable cause. *United States v. Leake,* 998 F.2d 1359, 1362 (6th Cir.1993). We view the evidence in the light most favorable to the government, *United States v. Harris,* 255 F.3d 288, 292 (6th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 378, 151 L.Ed.2d 288 (2001), giving deference to the district court's credibility determinations, *United States v. Hill,* 195 F.3d 258, 264–65 (6th Cir.1999). However, if the district court is itself a reviewing court, we are not required to give deference to its conclusions. *Leake,* 998 F.2d at 1362–63. When we review a magistrate's determination of probable cause and subsequent issuance of a warrant, we must give "great deference" to the magistrate's findings and should not set them aside unless they are arbitrary. *Id.* at 1363. We must uphold a magistrate's issuance of a warrant so long as the magistrate "had a substantial basis for ... conclud[ing] that a search warrant would uncover evidence of wrongdoing." *United States v. Mick,* 263 F.3d 553, 562 (6th Cir.2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Smith,* 182 F.3d 473, 477 (6th Cir.1999). It requires "only a probability of substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. 2317).

■ After carefully reviewing the record, we find that affidavit presented by Officer Bowman was sufficient under *United States v. Allen,* 211 F.3d 970, 976 (6th Cir.) (*en banc*) (holding that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found") (emphasis in original), *cert. denied,* 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000), and that the district court did not err in denying the motion to suppress. While the affidavit was not extremely detailed, it did contain information sufficient to permit the issuing judge to conclude that the informant was reliable and that he had firsthand knowledge about the presence of marijuana in Johnson's residence. The affidavit also indicated that Officer Bowman had received information from other sources confirming the informant's tip. This assignment of error is without merit.

## II. Disclosure of Confidential Informant

We review for abuse of discretion the district court's refusal to order the disclosure of the identity of a confidential informant. *United States v. Jenkins,* 4 F.3d 1338, 1341 (6th Cir.1993). The government enjoys the privilege of withholding the identities of individuals who provide information regarding violations of the law. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* The privilege is limited, however, by fundamental fairness. *Id.* at 60, 77 S.Ct. 623. The public interest in protecting the flow of information to the government must outweigh a defendant's need for disclosure in the preparation of his defense. *United States v. Straughter,* 950 F.2d 1223, 1232 (6th Cir.1991). The defendant bears the burden of demonstrating how disclosure would substantively as-

sist his defense. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992).

Disclosure usually is not required "when the informer was not a participant, but was a mere tipster or introducer." *United States v. Sharp,* 778 F.2d 1182, 1186 n. 2 (6th Cir.1985). And "[i]f the evidence on which the defendant was convicted was obtained personally by the government agents who did testify, the government is not required to produce the [informant]." *Jenkins,* 4 F.3d at 1341.

■ We conclude that Johnson did not meet his burden of demonstrating how the disclosure of the confidential informant would substantively assist his defense and how a failure to disclose would impede his ability to receive a fair trial. Moreover, the informant in this case was merely a tipster and not an active participant in the events underlying Johnson's criminal liability, and the evidence upon which Johnson was convicted was obtained personally by the numerous officers who testified. Under these circumstances, the government is not required to produce the informant. Accordingly, we find no abuse of discretion here.

## III. Constructive Possession of an Unregistered Firearm

When reviewing a claim that the evidence is insufficient to support a conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Vincent,* 20 F.3d 229, 233 (6th Cir.1994).

Section 5861(d) of Title 26 of the United States Code prohibits the possession of an unregistered firearm. For purposes of the statute, "firearm" is defined to include machine guns, which, in turn, include any weapon which "shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Possession may be either actual or constructive. *United States v. Jenkins,* 981 F.2d 1281, 1283 (D.C.Cir.1992); *United States v. Thomas,* 497 F.2d 1149, 1150 (6th Cir. 1974). A defendant may be found to have constructive possession over an item if he "knowingly has the power and the intention at a given time to exercise dominion and control over [the item]." *Thomas,* 497 F.2d at 1150. We have held that a jury may infer constructive possession over items found in a defendant's home. *United States v. Hill,* 142 F.3d 305, 312 (6th Cir.1998); *see also, United States v. Morris,* 977 F.2d 617, 620 (D.C.Cir.1992) (holding that a jury is entitled to infer that a person has constructive possession of items found in his home, and if there is sufficient evidence from which the jury may infer that the defendant lived in the premises where the items were found, the jury could infer that he constructively possessed the items).

■ During their search of Johnson's home, the officers recovered a loaded, fully automatic AA Arms Model AP9 9mm pistol in a locked briefcase on the coffee table. It is undisputed that the 9mm was not registered. We conclude that any rational trier of fact could have found beyond a reasonable doubt that Johnson possessed, at least constructively, the 9mm gun. This assignment of error is without merit.

## IV. Acquittal Under 18 U.S.C. § 924(c)(1)(A)

Finally, we turn to the government's appeal of the judgment of acquittal granted by the district court after the jury

verdict of guilty on Count Two of the indictment, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). We review de novo a district court's order granting a motion to acquit pursuant to Federal Rule of Criminal Procedure 29. *United States v. Lake*, 985 F.2d 265, 267 (6th Cir.1993). Where the jury has convicted the defendant and the district court has then granted a judgment of acquittal, we view the evidence in the light most favorable to the government. *Id.* Because the district court must grant the motion when the evidence is insufficient to sustain a conviction, *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir.1984), we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781. "Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir.1996) (internal quotation marks omitted).

After reviewing the evidence in light of this court's recent decision in *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 849, 151 L.Ed.2d 726 (2002), we conclude that the district court erred in granting the judgment of acquittal. In relevant part, 18 U.S.C. § 924(c)(1)(A) provides:

> any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime -

The dispute in this case with regard to § 924(c)(1)(A) is whether Johnson *possessed* a firearm in *furtherance* of a drug crime. The *Mackey* court recognized that Congress intended the "in furtherance of" limitation to be a high standard:

> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

265 F.3d at 461 (citing H.R.Rep. No. 105–344, 1997 WL 668339, at *11–12 (1997)).

■ Possession of the weapon "in furtherance of" the crime requires that possession of the weapon promote or facilitate the crime in question, and that there be a specific nexus between the firearm and the crime charged. *Id.* at 461, 462. Possession may rise to the level of being "in furtherance of" a drug crime if the firearm is strategically located for quick and easy use. *Id.* The *Mackey* court recognized the Fifth Circuit's list of factors relevant to a determination of whether a firearm was possessed in furtherance of a drug crime. Those factors include: (1) whether the firearm was loaded, (2) the type of firearm, (3) the legality of its possession, (4) the type of drug activity conducted, and (5) the time and circumstances under which the firearm was found. *United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir.2000), *cert. denied*, 531 U.S. 1102, 121 S.Ct. 839, 148 L.Ed.2d 720 (2001).

The officers searching Johnson's home found a loaded .45 semi-automatic pistol tucked between the cushion and the arm of the couch and a fully automatic AA Arms

Model AP9 9mm semi-automatic pistol under the coffee table. In the living room, the officers found baggies of marijuana on the coffee table near both of the guns and a notebook detailing drug transactions. In the bedroom, officers discovered a loaded Smith & Wesson .38 caliber revolver under a mattress and a partially disassembled SKS assault rifle that had been converted to be fully automatic—albeit the workmanship was too poor to permit the weapon actually to function in fully automatic mode—in the wardrobe. There also were weapons parts and ammunition in that bedroom, along with drugs in the bedroom safe. The officers seized additional drugs and drug paraphernalia throughout the house, especially in the kitchen.

There was ample evidence from which the jury could—and in fact did—conclude that Johnson was trafficking in marijuana from his home. The 9mm and the .38 were strategically located near the marijuana for quick and easy use, demonstrating a specific nexus between the weapons and the drug trafficking. Further, the SKS rifle in the bedroom was located near the safe that contained more marijuana.

And we note that a number of the *Ceballos–Torres* factors are present in this case. All three of the firearms were loaded; one of these weapons had been successfully converted into a fully automatic pistol; but for the poor workmanship, the SKS rifle would also have been fully automatic; the fully automatic AA Arms Model AP9 9mm was not registered to Johnson; Johnson was engaging in the possession and distribution of marijuana, as evidenced by his notebook logs and other drug paraphernalia; and finally, the firearms were located within arms' reach of the marijuana. We conclude that there was sufficient evidence to sustain Johnson's conviction under § 924(c)(1)(A).

CONCLUSION

For the foregoing reasons, we AFFIRM the convictions on Counts One and Four, REVERSE the judgment of acquittal on Count Two, and REMAND this matter to the district court for resentencing consistent with this opinion.